IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELIZABETH RETAIL PROPERTIES, LLC; JUDITH L. ANSTETH JEWELERS, INC.; and JUDITH ARNELL, an individual, | Case No. 3:13-cv-02045-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| KEYBANK NATIONAL ASSOCIATION, a national banking association, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

This matter comes before the Court on Defendant KeyBank National Association's ("KeyBank") motion to declare partial waiver of attorney-client privilege. For the reasons explained below, KeyBank's motion to declare partial waiver of attorney-client privilege (ECF No. 46) is granted, in part.

Page 1 - OPINION AND ORDER

## BACKGROUND

Judith Arnell ("Mrs. Arnell") and her husband, nonparty Charles Arnell ("Mr. Arnell"), are co-members of a single-asset Oregon limited liability company, Elizabeth Retail Properties, LLC ("Elizabeth Retail"). Mrs. Arnell is also the sole shareholder of an Oregon S corporation, Judith L. Ansteth Jewelers, Inc. ("Ansteth Jewelers"). In March 2007, Elizabeth Retail entered into a $615,000 loan agreement with KeyBank, and Ansteth Jewelers obtained a $100,000 business line of credit from KeyBank. The loan agreement and business line of credit were secured by guaranties from Mrs. Arnell, Mr. Arnell, and Ansteth Jewelers, and a trust deed for real property owned by Elizabeth Retail in Portland, Oregon, which was leased to Ansteth Jewelers for purposes of operating a retail jewelry store.

In February 2011, Mr. Arnell filed a voluntary Chapter 7 bankruptcy petition. About six months later, in August 2011, KeyBank's then-attorney, Craig Russillo ("Russillo"), sent a letter to Ansteth Jewelers, in care of its registered agent and Mrs. Arnell, indicating, *inter alia*, that KeyBank was aware of Mr. Arnell's bankruptcy petition, demanding payment in full on the business line of credit, and representing that KeyBank would foreclose on the deed of trust and pursue Mrs. Arnell on her guaranty, in the event Ansteth Jewelers did not make timely payment. Russillo also allegedly informed Susan Alterman ("Alterman"), the former attorney to Elizabeth Retail, Ansteth Jewelers, and Mrs. Arnell (collectively, "Plaintiffs"), that "there were no other defaults," and that KeyBank had "no intent to foreclose on the property" being leased to Ansteth Jewelers. (Pls.' Resp. Def.'s Mot. Declare Partial Waiver at 2.) Alterman informed Plaintiffs of Russillo's representations in an email dated August 25, 2011 (the "August 25 Email").

In September 2011, the bankruptcy court discharged Mr. Arnell's debts, and Ansteth Jewelers subsequently paid off the principal and interest remaining on its business line of credit. The following year, KeyBank informed Elizabeth Retail of other events of default on the loan agreement, and later filed a notice of default and election to sell in the Multnomah County Recorder's Office. The notice of default and election to sell stated that Elizabeth Retail and its guarantors defaulted on the loan agreement by not providing certain financial documents to KeyBank, by having a guarantor file for bankruptcy, and by failing to pay down the balance of the loan or provide additional collateral to KeyBank. KeyBank eventually purchased the property at a nonjudicial foreclosure sale held in February 2013.

Plaintiffs filed the present action on October 9, 2013, asserting exclusively state law claims against KeyBank. Two claims survived the first round of dispositive motions: bad faith breach of contract and defamation. KeyBank's motion to declare partial waiver of attorney-client privilege relates to Plaintiffs' claim for bad faith breach of contract, which is premised on the following allegations:

> 25. Based on information and belief, after sending the August 17, 2011 letter, KeyBank further informed the Plaintiffs through their counsel that there were no other defaults on the account.
>
> 26. KeyBank made these representations with the intent of inducing Plaintiffs to pay off the Line of Credit in order to avoid foreclosure on the Property. KeyBank was not forthright or honest about its intent to foreclose on the property because of other alleged defaults.
>
> 27. In reliance upon that representation, Plaintiffs paid KeyBank its demand of $87,358.42, . . . in order to protect their ongoing business interests.
>
> . . . .

> 45.  KeyBank's demand and acceptance of payment of the Line of Credit followed by its declaration of default, identification of a cure for default, demand for payment to cure the default, negotiation of a cure for the default, non-judicial foreclosure proceeding through Trustees['] sale and purchase of the property at Trustees['] sale were all in breach of its contract duty of good faith and fair dealing.

(First Am. Compl. ¶¶ 25-26, 45.)

## DISCUSSION

KeyBank moves the Court for an order declaring that Plaintiffs "have waived their attorney-client privilege relating to all communications—written and oral—with their previous attorney," Alterman, "during August 17, 2011 through September 8, 2011, on the subject of discussions and negotiations regarding a settlement agreement with KeyBank, assurances or representations by KeyBank that there were 'no other defaults,' as alleged in paragraph [twenty-five] of the [Amended] Complaint, and any agreement to modify or amend the plaintiffs' loan documents with KeyBank." (Def.'s Mot. Declare Partial Waiver at 1-2) (footnotes omitted). Plaintiffs represent that the August 25 Email is the only written communication relevant to the category of documents KeyBank seeks, that the August 25 Email is protected by the attorney-client privilege, and that KeyBank could obtain the information it seeks by deposing Alterman and Russillo about their conversation.

Jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332(a). The Court therefore applies Oregon state law to resolve an attorney-client privilege claim. *See Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1081 (C.D. Cal. 2010) ("In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege claims." (citing, *inter alia*, FED. R. EVID. 501, and *Star Editorial, Inc. v. U.S. Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993))).

Under Oregon law, the attorney-client privilege is governed by statute: Oregon Evidence Code ("OEC") 503, codified at Oregon Revised Statute § 40.225. *See Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or. 476, 485 (Or. 2014) (en banc). The Oregon Supreme Court has held that, under OEC 503, the privilege-holder must meet three requirements before asserting a claim of attorney-client privilege with respect to a communication: (1) the communication must have been between a "client" and the client's "lawyer," as those terms are defined in OEC 501(a) and (c); (2) the communication must have been a "confidential communication," as that term is defined in OEC 503(1)(b); and (3) the communication must have been "made for the purpose of facilitating the rendition of professional legal services to the client." *Id.* (citing *State v. Jancsek*, 302 Or. 270, 275 (Or. 1986)).

"A person claiming the lawyer-client privilege waives that privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication." *State v. Taylor*, 247 Or. App. 339, 345 (Or. App. 2011) (citing OEC 511). As confirmed by the legislative commentary of OEC 511, if a person waives the privilege by voluntary disclosure, the privilege is also waived as to other communications on the same subject:

> If the holder has voluntarily disclosed or consented to the disclosure of any significant part of a privileged communication, then the entire communication may be inquired into. Furthermore, the privilege in question is waived as to other communications on the same subject with the same person, and communications on the same subject with other persons. . . . It is not necessary that the holder or other person testify to every detail for waiver to be effective.
>
> Waiver by disclosure of part or all of a privileged communication can occur in any situation, within or without the context of a lawsuit. . . . [For example,] waiver can occur during discovery . . . .

Page 5 - OPINION AND ORDER

Legislative Commentary to OEC 511, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 511.02, 428 (6th ed 2013) (internal citations omitted); *see also Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (citing with approval excerpts from *Wigmore on Evidence*: "(W)hen (the privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege cease whether he intended that result or not" and "[h]e cannot be allowed, after disclosing as much as he pleases, to withhold the remainder").

Here, Plaintiffs believe that the only communication encompassed by KeyBank's motion is the August 25 Email, wherein Alterman summarized a phone conversation she had with Russillo (then KeyBank's counsel), regarding Plaintiffs' loans with KeyBank. KeyBank argues that Plaintiffs have waived any attorney-client privilege that may have attached to that email, by voluntarily disclosing a significant part of the August 25 Email in this litigation (citing Plaintiffs' original complaint, amended complaint, and discovery responses). For example, KeyBank points to the answer Ansteth Jewelers provided to Interrogatory No. 8 of KeyBank's first set of interrogatories:

> INTERROGATORY No. 8: Please describe in detail the factual basis of your response to Request for Admission No. 15, that 'the line of credit was paid off only after plaintiff was assured by Defendant that there were no other defaults and no intent to foreclose on the property in which plaintiff operated its business,' including identification of all communications, whether oral or written, relating to such assurance.
>
> ANSWER: [The factual basis of the response to Request for Admission No. 15] was based on a communication between Craig Russillo and Susan Alterman on or about August 25, 2011. My knowledge is based on a privileged communication between Ms. Alterman and me.

(Def.'s Mot. Declare Partial Waiver, Ex. A-3, at 4.) Plaintiffs respond that Ansteth Jeweler's answer identifies only the existence of a communication, not its contents: "There can be no real issue that

Page 6 - OPINION AND ORDER

identifying the existence of the e-mail did not amount to a waiver of anything." (Pls.' Resp. Def.'s Mot. Declare Partial Waiver at 5.)

The Court concludes that Plaintiffs have waived the attorney-client privilege with respect to the August 25 Email, as well as any other communications between Alterman and Plaintiffs from August 17, 2011 through September 8, 2011, on the subject of Russillo's statements to Alterman. In their First Amended Complaint, Plaintiffs alleged that "KeyBank further informed the Plaintiffs through their counsel that there were no other defaults on the account." (First Am. Compl. ¶ 25.) In their discovery responses, Plaintiffs disclosed additional details regarding KeyBank's alleged representations: "[Plaintiffs were] assured by Defendant that there were no other defaults and no intent to foreclose on the property in which [Ansteth Jewelers] operated its business." (Def.'s Mot. Declare Partial Waiver, Ex. A-1, at 5.) Plaintiffs admitted that the only factual basis for this statement is the August 25 Email. (Def.'s Mot. Declare Partial Waiver, Ex. A-3, at 4.)

Plaintiffs' discovery responses disclose more than just the existence of the August 25 Email–Plaintiffs have also now revealed the material substance of that email. *See Taylor*, 247 Or. App. at 345 (quoting the legislative commentary of OEC 511 for the proposition that "a person must disclose part of the communication itself in order to effect a waiver"); Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5.33 (4th ed. 2013) ("Waiver by disclosure only occurs if the client (or her lawyer) reveals what one told the other."). Plaintiffs have disclosed that in the August 25 Email, Alterman allegedly communicated Russillo's assurance that there were no other defaults, and that KeyBank had no intent to foreclose on the property in which Ansteth Jewelers operated its business.

The Court has reviewed the August 25 Email *in camera*, and concludes that: (1) most of the August 25 Email is merely a factual summary of the Alterman/Russillo conversation, without any editorializing, and is not protected by the attorney-client privilege;[1] (2) the August 25 Email is only protected by the attorney-client privilege to the extent it reflects Alterman's selection of what part of the Alterman/Russillo conversation to communicate to her client; (3) Plaintiffs have already disclosed in this litigation what parts of the Alterman/Russillo conversation Alterman chose to communicate to her client; and (4) those already-disclosed parts of the Alterman/Russillo conversation Alterman chose to communicate to her clients constitute a material and significant part of the (arguably) privileged communication. *See Taylor*, 247 Or. App. at 345 ("A person claiming the lawyer-client privilege waives that privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication."). As such, Plaintiffs have waived any attorney-client privilege that may have attached to the August 25 Email, as well as to any other communications from August 17, 2011 through September 8, 2011, between Alterman and Plaintiffs on the subject of Russillo's statements to Alterman.[2]

/////

/////

---

[1] *See* OEC 503(1)(b) (defining "confidential communication" to mean "a communication not intended to be disclosed to third persons"); *see also S.E.C. v. Wyly*, No. 10-cv-5760, 2011 WL 3055396, at *11 (S.D.N.Y. July 19, 2011) ("[A] lawyer who acts only as a conduit for information is not providing any kind of legal advice [to his client], and so the communication is not privileged."); *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24-25 (1st Cir. 2011) ("If . . . the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged."); *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.").

[2] In light of this ruling, the Court does not reach KeyBank's other arguments.

Page 8 - OPINION AND ORDER

## CONCLUSION

For the reasons stated, KeyBank's motion to declare partial waiver of Plaintiffs' attorney-client privilege (ECF No. 46) is GRANTED, to the extent specified in this Opinion and Order.

IT IS SO ORDERED.

Dated this 28th day of October, 2015.

*Stacie F. Beckerman*
STACIE F. BECKERMAN
United States Magistrate Judge